UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-80972-Civ-ZLOCH

REGINALD EUGENE GRIMES,

        Plaintiff,

v.

OFFICER RICHARD ROTT, et al.,

        Defendants.
_____/

## DEFENDANT RICHARD ROTT'S STATEMENT OF MATERIAL FACTS

COMES NOW, RICHARD ROTT, a Defendant named in this action, by and through the undersigned Assistant United States Attorney for the Southern District of Florida, and pursuant to Fed.R.Civ.P. 56(c) and Local Rule 56.1, provides the following statement of material facts, and documents referenced therein, in support of his motion for summary judgment.

1. As this Court has already acknowledged in the Preliminary Report of Magistrate Judge:

> On January 13, 2015, Grimes, along with eighteen others, was charged by Indictment with multiple offenses stemming from a wiretap investigation. See United States v. Moore, et al., 15-80003-Cr-Middlebrooks. Specifically, Grimes was charged with conspiracy to distribute and possess with the intent to distribute at least one kilogram of heroin, in violation of Title 21, United States Code, Section 846 and possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841. Id. at DE # 3."[1]

---

[1] In the Preliminary Report of Magistrate Judge, U.S. Magistrate Judge White indicated that the Court had taken judicial notice of its own records filed in the underlying criminal case, and cited Fed.R.Evid. 201(b)(2), (c) and United States v. Glover, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) in support thereof. See DE 9, page 4, f.n. 1. On the same basis, Defendant Rott has included further citations to the record of the underlying criminal case in this motion.

1

See Preliminary Report of Magistrate Judge, DE 9, page 4, citing the underlying criminal case file.

2.   On the day the indictment was returned in the underlying criminal case, a warrant was issued for the arrest of Reginald Eugene Grimes, the plaintiff in the present action.  **Exhibit 1:** Arrest Warrant, Case No. 15-80003-Cr-Middlebrooks, DE 163.[2]

3.   Prior to the time of his indictment in 2015, Mr. Grimes had "a lengthy, serious criminal history with at least 30 arrests, including several serious violent crimes and drug crimes, FTAs & VOP, & fleeing & attempting to elude."   **Exhibit 2:** Detention Order, Case No. 15-80003-Cr-Middlebrooks, DE 293, page 2.

4.   Plaintiff's criminal history included numerous convictions for possession of a firearm by a convicted felon, as well as convictions for battery on a law enforcement officer.   **Exhibit 3**: United States' Notice of Intention to Admit Defendant's Prior Convictions As Impeachment, Case No. 15-80003-Cr-Middlebrooks, DE 503, pages 1 - 2.

5.   On January 14, 2015, at about 5:00 a.m., an arrest team composed of Deputy U.S. Marshals (DUSMs), and U.S. Marshals Service (USMS) and Drug Enforcement Administration (DEA) Task Force Officers (TFOs), assembled in the parking lot of a Walgreens pharmacy, located at 45th and Broadway, West Palm Beach, Florida, for the purpose of locating and arresting Mr. Grimes.  **Exhibit 4**: Excerpts from the transcript of Jury Trial Proceedings (hereafter "Criminal Trial Transcript"), Day III, Case No. 15-80003-Cr-Middlebrooks, DE 752, pages 157-158 (testimony of DUSM Jim Hart), and pages 175–176 (testimony of TFO Richard Rott).[3]

---

[2]   The docket entries from the underlying criminal case which are particularly significant in relation to the issues in the instant case have been cited and designated as exhibits to ensure that they are available for Plaintiff Grimes's review.

[3]   Plaintiff Grimes represented himself as a pro se defendant, with standby counsel, during

2

6.   The arrest team believed that Mr. Grimes was staying at a girlfriend's house located nearby.  Id. at 158.

7.   At about 5:30 a.m., several of the TFOs decided to drive by the residence where Mr. Grimes was believed to be staying.   Exhibit 4 at 158, 176.   As they drove by the residence in an unmarked pick-up truck, the TFOs noted that the rental vehicle Mr. Grimes was known to be driving at the time, a blue Ford sport utility vehicle (SUV), was leaving the residence and heading toward the arrest team's staging point at the Walgreens pharmacy.   Id. at 158 - 159, 160, 176-177.   It was still dark at this time.   DE 1, page 3, ¶ 1.

8.   The TFOs who had seen Grimes's vehicle alerted the other members of the arrest team by radio about the movement of the SUV and followed it down the street. Exh 4 at 159, 177.

9.   When Mr. Grimes's vehicle came into the vicinity of the Walgreens pharmacy, the trailing TFOs' vehicle pulled up behind the SUV and attempted a traffic stop by activating its blue emergency lights.   Exhibit 4 at 159-161, 177-178.

10.   The SUV stopped momentarily and the officers noted that the driver of the SUV fit the description of Mr. Grimes which had been distributed to them.[4]   Id. at 159-162, 177-178.

---

his criminal trial.  See Exhibit 4, page 1.  Therefore, Mr. Grimes had a full opportunity to cross-examine DUSM Hart, TFO Rott, and all of the other law enforcement officers who testified at the trial.  See, for instance, Exhibit 4, pages 167-175, 183-187.  He also had the opportunity to call these witnesses and other law enforcement officers in presenting the defendant's case at the criminal trial.   In fact, Plaintiff named a number of law enforcement officers as witnesses during his trial.  See Pro Se Defendant's Witness List, Case No. 15-80003-Cr-Middlebrooks, DE 640.  Despite identifying and naming these officers in preparation for his criminal trial, Plaintiff has still not identified any of the officers whom he has designated in this case as "unknown named agents".

[4]   The driver was, in fact, Mr. Grimes, as indicated below.   Therefore, the remaining brief description of Mr. Grimes's actions in the vehicle will identify Mr. Grimes as the driver.

11. A moment later, Mr. Grimes's vehicle sped away and a chase ensured. Id. at 161-162, 178. All of the remaining law enforcement vehicles, with lights and sirens activated, pulled out of the Walgreens' parking lot and followed the SUV. Id. at 162-163, 178-179. Seven or eight law enforcement vehicles were soon involved in the vehicle pursuit. Id. at 163, 179.

12. Grimes led the pursuing law enforcement vehicles out of the municipal boundaries of West Palm Beach and into Riviera Beach, Florida. Id. at 163-164, 179-181.

13. During the pursuit, Grimes drove down side streets and in the wrong direction on one-way streets. Id. at 163. His speed varied between high and lower speeds. Id. at 164. Mr. Grimes almost hit two cars driven by DUSMs during this time. Exhibit 4, at 163.

14. Near the intersection of 28th Street and Old Dixie Highway in Riviera Beach, Florida, Mr. Grimes was driving too fast to make a turn, and slammed into a curb on the east side of Old Dixie Highway. Id. at 163-164, 180-181. The apparently disabled SUV came to a stop in the vicinity of a grass median area. Id. at 163-164. From beginning to end, the chase lasted a bit less than ten minutes. Id., at 164.

15. The law enforcement vehicle immediately behind Grimes's SUV at this time was driven by DUSM Jim Hart. Id. at 163-164. Deputy Hart was following closely behind Grimes and, when Grimes's vehicle stopped abruptly at the median, Deputy Hart's vehicle slid into the back of the SUV. Id. at 163-165.

16. At the time Deputy Hart's car came into physical contact with the SUV, Mr. Grimes was halfway out of the opened driver's side door of his vehicle. Exhibit 4 at 164-165.

17. The other law enforcement officers who had arrived at the scene by that time immediately ordered Mr. Grimes to the ground. Id. at 165. Mr. Grimes dropped to the ground,

4

and was taken into custody.  Id.  DUSM Hart was the law enforcement officer who handcuffed Mr. Grimes.  Id.

18.  During the trial of the underlying criminal case, DUSM Hart was called as a witness during the third day of the government's case in chief, on July 29, 2015.[5]  During his testimony, DUSM Hart testified about the circumstances surrounding Mr. Grimes' arrest, as described in paragraphs 5-17 above.  Id. at 157-167.  As he recounted the arrest, DUSM Hart did not suggest that TFO Rott was in the immediate vicinity, or assisting Hart, at the time Mr. Grimes was handcuffed.  Id. at 165.

19.  DUSM Hart testified that arresting officers had searched Mr. Grimes incident to his arrest, and found four cellphones in his pockets.  Id. at 165-166.  DUSM Hart identified the four cellphones as exhibits which had been marked at the trial.  Id.  DUSM Hart testified that the cellphones were seized by the USMS and subsequently "turned over to the DEA".  Id.

20.  During the trial of the criminal case, Mr. Grimes cross-examined DUSM Hart.  Id. at 167-174.  During his cross-examination, Deputy Hart testified that after Grimes's arrest, the arresting officers asked Grimes if he needed medical attention because he had been half in and half out of his SUV when Deputy Hart's vehicle collided with it.  Id., at 173.  Deputy Hart testified that Grimes had declined medical attention and did not appear to be bleeding.  Id. at 173.

---

[5]  It should be noted that, despite the fact that DUSM Hart: collided with Grimes' vehicle, was at the scene when Grimes was taken into custody, personally handcuffed Grimes, was present for his search, and testified against Mr. Grimes at trial, Mr. Grimes did not name DUSM Hart as a defendant in this case.  Rather, he only specifically named TFO Rott, who was working with DEA, the agency supervising the underlying narcotics investigation in this action.

21. For the Court's consideration in this case, in order to clarify his testimony about Mr. Grimes' arrest, DUSM Hart has provided a sworn statement. See **Exhibit 5**: Declaration of DUSM Jim Hart. DUSM Hart's declaration indicates that TFO Richard Rott was not present at the time Mr. Grimes was arrested on January 14, 2015. See Id., ¶ 5. In this statement, Deputy Hart said that TFO Rott arrived at the scene after Grimes had been placed in handcuffs and searched. Id. DUSM Hart also recalled that Mr. Grimes's cell phones were turned over to TFO Rott after he arrived at the scene. Id., ¶ 6.

22. During the trial of the criminal case, TFO Richard Rott was also called to testify during the government's case in chief. Exhibit 4, at 175-188. At the time of his testimony, TFO Rott was a detective assigned to the Riviera Beach Police Department, where he had served for ten years.[6] Id. at pages 175-176. During the time of the investigation involving Grimes, Detective Rott was assigned as a TFO at the West Palm Beach DEA office. Id.

23. TFO Rott testified regarding his assignment with the arrest team, and his role in the chase described in the paragraphs above. Exhibit 4, at 176-183. TFO Rott testified that, at one point during the vehicle chase, he actually lost pursuit of Grimes's vehicle. Id. at 179. When TFO Rott saw Grimes's SUV and the pursuing officers again, TFO Rott was traveling in the opposite direction from the other vehicles on 23rd Street in Riviera Beach. Id. at 179-180. TFO Rott had to make a U-turn to join back in the pursuit. Id. at Page 180.

24. TFO Rott also testified that he was the last of the arrest team to arrive at the location of the termination of the chase. Exhibit 4 at 180-181. When TFO Rott approached the 2900

---

[6] Richard Rott is still a detective with the Riviera Beach Police Department. He is not presently assigned to DEA's Task Force.

6

block of Old Dixie Highway in Riviera Beach, he saw Grimes's now stationary vehicle, which appeared to have been involved in an accident with one of the U.S. Marshal's vehicles.  Id. at 181.

25.  TFO Rott further testified that when he exited his vehicle, he saw Mr. Grimes seated on the curb on the east side of the road.  Id.  Mr. Grimes was already in the custody of the USMS officers at that time.  Id.

26.  TFO Rott testified that four cell phones were lying next to Mr. Grimes when he arrived.  Id. at 181, 185.  TFO Rott was advised by the USM TFOs that the cell phones were Grimes's property which they had found during a search incident to Grimes's arrest.  Id. at 181-182, 185-186.  TFO Rott took custody of the cell phones as evidence related to DEA's investigation, and he later identified these phones when he testified at trial.  Id. at 182, 185-186.

27.  When TFO Rott saw Mr. Grimes at the arrest scene, Grimes did not appear to be injured in any way.  Exhibit 4, at 182-183, 186.  TFO Rott testified that he asked Mr. Grimes if he was injured or needed medical attention, and Grimes denied that he had been injured or needed attention.  Exhibit 4, at 182.

28.  During the trial of the criminal case, Mr. Grimes cross-examined TFO Rott.  Id. at 183-187.  Notably, during Mr. Grimes's cross-examination of TFO Rott, Grimes did not question TFO Rott's statements indicating that he had arrived on the scene after the apparent accident had occurred, that the arrest and search of Grimes had been completed before TFO Rott's arrival, and that Grimes was in custody and seated on a curb when TFO Rott first approached the scene.

29.     During this cross-examination, Mr. Grimes asked TFO Rott whether he had been assaulted while he "*was in the custody of the Marshals Service*".  Id. at 186.  TFO Rott responded as follows: "From the time I arrived, I was with you 99 percent of the time, and I didn't observe no physical altercation or combat between you or any of the individuals."  Id.

30.     DUSM Hart testified that Mr. Grimes was eventually placed in a car and taken to the DEA office.  Id. at 174.

31.     At the DEA office, Sergeant Robert Keating, a Delray Beach Police Department officer attached to DEA's task force during the narcotics investigation which led to Grimes's indictment in the underlying criminal case, spoke with Mr. Grimes.  **Exhibit 6**: Excerpts from the Criminal Trial Transcript, Day I, Case No. 15-80003-Cr-Middlebrooks, DE 750, pages 125-127, 204-205 (testimony of Sergeant Robert Keating).

32.     Mr. Grimes called Sergeant Keating as a witness during the defense case.  **Exhibit 7**: Excerpts from the Criminal Trial Transcript, Day IV, Case No. 15-80003-Cr-Middlebrooks, DE 753, pages 14, 31-32 (testimony of Sergeant Robert Keating).  During his testimony, Sergeant Keating testified that he saw Mr. Grimes at the DEA office on the day of his arrest and Mr. Grimes "looked fine", and had no apparent scars, bleeding or head injuries.  Id. at 31-32.

33.     After Mr. Grimes's arrest processing was completed at the DEA office, SA William Linehan, who had been with the DEA for seventeen years and was assigned to the underlying criminal investigation, transported Mr. Grimes to the Palm Beach County Jail.  See Exhibit 6, at 289; Exhibit 7, 165-168.  SA Linehan testified at the criminal case trial about events which occurred when Mr. Grimes was taken to the jail for detention pending further proceedings.  See, Exhibit 7, pages 165-168.

34. SA Linehan testified that, when he first met with Mr. Grimes at the DEA office that morning, SA Linehan had asked Grimes, pursuant to DEA policy, how he was feeling. Grimes had responded that "he was fine". Exhibit 7, at 167. However, when SA Linehan took Grimes in for processing at the jail, Grimes began complaining for the first time about having a head injury when he spoke with jail intake personnel. Id.

35. Based on Mr. Grimes's statement about an injury, the jail employees advised SA Linehan that they could not accept Grimes until he was checked over and released by doctors. Id., at 166. So, SA Linehan then took Grimes to a local hospital for examination. Id. After Grimes was checked over at the hospital, he was discharged shortly thereafter, and nothing further came of his complaints. Id. at 166-67.

36. For the Court's consideration in this case, in order to supplement his testimony about Mr. Grimes's visit to the hospital on the day of his arrest, SA Linehan has provided a sworn statement. See **Exhibit 8**: Declaration of William Linehan. In his statement, SA Linehan elaborated upon his trial testimony by stating that he transported Mr. Grimes to the Wellington Regional Medical Center, where physicians examined Mr. Grimes's head. Id. at ¶ 11. SA Linehan stated that he was informed by a doctor that Mr. Grimes's medical condition was good, and he could be released from the medical center without further treatment. Id. at ¶ 12. The total time SA Linehan spent at the Wellington Regional Medical Center was approximately one and one-half hours. Id.

37. SA Linehan transported Mr. Grimes back to the Palm Beach County Jail, and Mr. Grimes was handed over to the custody of the jail intake officers. Id. at ¶ 14.

38. In his declaration, SA Linehan identified the forms he had received on January 14,

9

2015 as he transported Mr. Grimes to the various stops he described in his testimony. Exhibit **8A** is a pre-booking screening sheet from the Palm Beach County jail indicating that Plaintiff had complained of "head trauma" at about 12:53 pm, during his first visit. Exhibit **8B** is the medical report of Mr. Grimes's visit to the Wellington Regional Medical Center. This form indicates that Mr. Grimes was examined and diagnosed as having a "head contusion" after his arrival at about 2:29 pm.[7] See Exhibit 8B, page 1. He was examined, prescribed ibuprofen, and deemed "medically stable for jail". See Exhibit 9B, page 2. Exhibit **8C** indicates that Mr. Grimes was booked into the Palm Beach County jail at about 5:00 p.m. with a medical clearance noting "head contusion".

39. On July 15, 2015, Mr. Grimes filed his Bivens complaint. See DE 1. Therefore, Mr. Grimes's complaint was filed twelve days before his criminal trial commenced on July 27, 2015. See Exhibit 6, page 1. In his complaint, Mr. Grimes alleges that he was beaten by TFO Rott and other unidentified federal agents on January 14, 2015, after he pulled his vehicle over and "lay face down on the pavement". DE 1, page 4, ¶ 2.

40. Grimes was convicted of the conspiracy and heroin possession charges in which he was named in the indictment, and was sentenced to a term of imprisonment of one hundred sixty-

---

[7] The hospital report included standard definitions, and instructions for identified conditions. The report noted that the observed "scalp contusion" was a "bruise with swelling and sometimes bleeding under the skin". See Exhibit 9B, page 3. This portion of the report indicated that "there is no sign of a serious injury at this time". Id.

eight (168) months.   **Exhibit 9:** Corrected Judgment In A Criminal Case Case, Case No. 15-80003-Cr-Middlebrooks, DE 789.

        Respectfully Submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

          s/ David I. Mellinger
        DAVID I. MELLINGER
        Assistant United States Attorney
        FL Bar # 0821365
        Email: David.Mellinger@usdoj.gov
        U.S. Attorney's Office
        500 East Broward Blvd., Suite #700
        Fort Lauderdale, FL 33394
        Tel. 954-660-5722 Fax 954-356-7180
        *Attorney for Defendant*

Of Counsel:

Michael J. Fraggetta
Drug Enforcement Administration
Office of Chief Counsel, Civil Litigation Section
8701 Morrissette Drive
Springfield, VA   22152
Tel. 202-598-8950Fax 202-307-8046

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on this 13th day of October, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record on the following Service List in the manner specified.

          s/ David I. Mellinger
        DAVID I. MELLINGER
        Assistant United States Attorney

**SERVICE LIST**
Reginald Eugene Grimes v. Officer Richard Rott
Case No. 15-80972-Civ-ZLOCH
United States District Court, Southern District of Florida

| | |
|---|---|
| Reginald Eugene Grimes<br>#40127-004<br>Federal Correctional Complex<br>  (Yazoo City Low)<br>P.O. Box 5000<br>Yazoo, MS   39194<br>*Plaintiff*<br><br>**via U.S. Mail** | David I. Mellinger<br>Assistant United States Attorney<br>E-mail: David.Mellinger@usdoj.gov<br>United States Attorney's Office<br>500 E. Broward Boulevard, Suite 700<br>Fort Lauderdale, Florida 33394<br>Tel: 954-660-5722 Fax 954- 356-7180<br>*Attorney for Defendant*<br><br>**via Notices of Electronic Filing generated by CM/ECF** |