UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80972-CV-RUIZ
MAGISTRATE JUDGE REID

REGINALD EUGENE GRIMES,

      Plaintiff,

v.

OFFICER RICHARD ROTT,
*et al.,*

      Defendants.

_____/

**REPORT OF MAGISTRATE JUDGE RE**
**DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**
**[ECF 220]**

### I. Introduction and Pertinent Procedural History

Plaintiff, **Reginald Eugene Grimes,** filed a *pro se*[1] civil rights complaint,

pursuant to *Bivens*.[2] [ECF No. 1]. Procedurally, after Plaintiff was granted pauper

---

[1] Although Plaintiff now has counsel, at the time he filed this action, Plaintiff was proceeding *pro se.* Since he was *pro se,* his pleadings were liberally construed. *See Trawinski v. United Techs.,* 313 F.3d 1295, 1297 (11th Cir. 2002)(*per curiam*). Because his complaint was properly sworn, when considering his opposition to summary judgment, the court credits the specific facts pled by Plaintiff in the complaint. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986)(*per curiam*) and *Sammons v. Taylor,* 967 F.2d 1533, 1545 n.5 (11th Cir. 1992)).

[2] *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971).

1

status, the Complaint was screened, in accordance with the Prison Litigation Reform Act ("PLRA"), a Report was entered recommending that the case proceed on Plaintiff's claims of unlawful use of force and punitive damages against Defendants, Officer Richard Rott ("Officer Rott"), Special Deputy U.S. Marshal Chris Baker ("SpDUSM"), SpDUSM Anton Franks, SpDUSM Steven Hearn, DUSM David Santana, SpDUSM Jacob Sirmans, SpDUSM Andrew Tallichet, SpDUSM Rodney Vizzo, and Mrs. Parrett, as the successor of SpDUSM Bryan Parrett (jointly "the Defendants").[3] [ECF Nos. 8, 9].

The Defendants have filed a joint motion for summary judgment, arguing they are entitled to judgment as a matter of law because:

1. Plaintiff has not demonstrated that any force was applied, much less unlawful and excessive force during Plaintiff's arrest; and,

2. Defendants are entitled to qualified immunity on Plaintiff's excessive force claim.

[ECF No. 220, pp. 2-8]. For the reasons discussed below, the Defendants' joint motion should be DENIED, and the case proceed to trial.

---

[3]Initially, except for Officer Rott, all of the remaining codefendants were identified as John Does, but were later substituted by Order of Interlineation entered on January 18, 2018. [ECF No. 110].

The case was previously referred to the undersigned for the issuance of reports and recommendations on all dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(B), (C), and S.D. Fla. Admin. Order 2019-2.

For its review, the court has considered the Defendants' joint motion for summary judgment [ECF No. 220] with supporting statement of material uncontroverted facts with attached exhibits [ECF No. 221], including the conventionally filed DVD containing a television video recording of Plaintiff's January 14, 2015 arrest [ECF No. 226], the Plaintiff's response to Defendants' summary judgment motion [ECF No. 238], the Plaintiff's response to the statement of uncontroverted material facts [ECF No. 239], and the Defendants' reply [ECF No. 243].

## II. Applicable Standard of Review

### A. *Bivens* Action

Under certain circumstances, federal officials, or those acting under color of federal law, may be sued for the deprivation of federal constitutional rights. *See Taylor v. Pekerol,* 760 F. App'x 647, 652 (11th Cir. Jan. 7, 2019)(*per curiam*)(unpub.)(citing *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66 (2001)). In *Bivens,* the United States Supreme Court recognized for the first time an implied private action for damages against federal officers for violations of certain

3

constitutional rights despite the absence of any statute conferring such right. *Corr. Servs. Corp.,* 534 U.S. 61, 66 (2001). Because *Bivens* is the federal counterpart of a civil rights action under 42 U.S.C. §1983, raising similar claims, the Eleventh Circuit generally applies § 1983 law to *Bivens* cases. *See Taylor v. Pekerol,* 760 F. App'x at 652 (citing *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir. 1995)(*per curiam*)). "It is well settled that § 1983, by itself, does not create any substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *See Glover v. Eighth Unknown D.E.A. Agents/Drug Task Force*, 225 F. App'x 781, 784 (11th Cir. Feb. 23, 2007)(*per curiam*)(unpub.)(citing *Graham,* 490 U.S. 386, 393-94 (1989)).

### B. Motion for Summary Judgment

The Defendants have filed a joint motion for summary judgment claiming they are entitled to summary judgment as a matter of law because no constitutional rights were violated. [ECF No. 220]. Pursuant to Fed. R. Civ. P. 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.,* 869 F.3d 1204, 1220 (11th Cir. 2017)(quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

4

In reviewing a motion for summary judgment, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcon v. Mail Centers Plus, LLC,* 843 F.3d 1295, 1304 (11th Cir. 2016)(quoting *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012)(citing *FindWhat Investor Grp.,* 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" *Great Am. All. Ins. Co. v. Anderson,* 847 F.3d 1327, 1331 (11th Cir. 2017)(quoting *Fed. R. Civ. P.* 56(a)), the moving party necessarily

carries the burden. *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Celotex,* 477 U.S. at 323). In meeting that burden, nonmoving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille,* 117 F.3d 1235, 1236 (11th Cir. 1997)(quoting *Celotex,* 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Anderson,* 477 U.S. at 248). However, a "mere scintilla of evidence" is insufficient "to create a genuine issue of material fact." *See Hinson v. Bias,* 927 F.3d 1103, 1116 (11th Cir. 2019)(quoting *Anderson,* 477 U.S. at 252). Instead, "the nonmoving party must present enough evidence to allow a jury to reasonably find in its favor." *Hinson,* 927 F.3d at 1116. The evidence must be sufficient "to allow a jury to reasonably find in its favor." *Hinson,* 927 F.3d at 1116 (citing *Anderson,* 477 U.S. at 252").

When ruling on a motion for summary judgment, courts must consider any "specific facts" pled in the Plaintiff's sworn complaint, based on personal

knowledge, and executed under penalty of perjury, in opposition to summary judgment; or, a sworn response to a summary judgment motion as "testimony." *See* Fla. R. Civ. P. 56(e); *Caldwell,* 748 F.3d at 1098; *Sears v. Roberts,* 922 F.3d 1199, 1206 (11th Cir. 2019)(citing *United States v. Stein,* 881 F.3d 853, 857 (11th Cir. 2018)(*en banc*)("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and *Barker v. Norman,* 651 F.2d 1107, 1115 (5th Cir. Unit A 1981)(stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)). No separate affidavit needs to be filed by the *pro se* prisoner where the facts alleged in the inmate's sworn complaint are not conclusory in nature. *Sammons v. Taylor,* 967 F.2d 1533 n.5 (11th Cir. 1992). However, unsworn statements may not be considered in evaluating a summary judgment motion. *Sharma v. Johnston,* 515 F. App'x 818, 819 (11th Cir. Apr. 4, 2013)(*per curiam*)(unpub.)(citing *Carr v. Tatangelo,* 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)).

At this stage, the evidence and all reasonable inferences from the evidence are viewed in the light most favorable to the Plaintiff, as the nonmovant, but those inferences are drawn "only 'to the extent supportable by the record.'" *Penley v.*

*Eslinger,* 605 F.3d 843, 848 (11th Cir. 2010)(quoting *Scott v. Harris,* 550 U.S. at 381, n.8).

### C. Fourth Amendment Unlawful Use of Force

Plaintiff alleges the named Defendants used excessive force during the course of his arrest. The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest. *See Stephens v. DeGiovanni,* 852 F.3d 1298, 1314-15 (11th Cir. 2017) (citing *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008)). To prevail on an excessive force claim under the Fourth Amendment, Plaintiff must demonstrate that (1) a seizure occurred and (2) that the force used during that seizure was unreasonable. *See Reed v. Clough,* 694 F. App'x 716, 724 (11th Cir. Jun. 2, 2017)(*per curiam*)(unpub.)(citing *Troupe v. Sarasota Cty.,* 419 F.3d 1160, 1166 (11th Cir. 2005)). "A seizure occurs when an officer 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Reed v. Clough,* 694 F. App'x at 724 (quoting *California v. Hodari D.,* 499 U.S. 621, 625 (1991)).

The test for determining reasonableness is an objective one. *See Graham,* 490 U.S. at 396. The "use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

8

hindsight." *See Gomez v. United States,* 601 F. App'x 841, 849 (11th Cir. Feb. 11, 2015)(quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993)(quotation marks omitted), *modified on other grounds,* 14 F.3d 583 (11th Cir. 1994)).

"Determining whether the force used to effect a particular seizure was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396. This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Williams v. Bauer,* 503 F. App'x 858, 861 (11th Cir. Jan. 14, 2013)(unpub.)(quoting *Graham,* 490 U.S. at 396).

Other factors courts consider include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *Hadley,* 526 F.3d at 1329. The Supreme Court has recognized, however, "that the right to make an arrest or investigatory stop

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *See Graham,* 490 U.S. at 396.

The Eleventh Circuit has further explained that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Williams v. Bauer,* 503 F. App'x 858, 861 (11th Cir. Jan. 14, 2013)(*per curiam*)(unpub.)(quoting *Lee v. Ferraro,* 284 F.3d 1188, 1198 (11th Cir. 2002)). However, "even *de minimus* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." *Gomez,* 601 F. App'x at 850 (quoting *Reese v. Herbert,* 527 F.3d 1253, 1272 (11th Cir. 2008)). For example, the "gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." *See Gomez,* 601 F. App'x at 650 (citing *Saunders v. Duke,* 766 F.3d 1262, 1265, 1270 (11th Cir. 2014)(denying qualified immunity where officers allegedly slammed an already-handcuffed arrestee's head against the pavement with extreme force and stating also that "a plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages if he does not have compensable injuries") and *Hadley,* 526 F.3d at 1231-32 (holding that a plaintiff

10

could seek nominal damages based on pain and suffering where officers kicked and beat the handcuffed plaintiff).

### D. Qualified Immunity

The Defendants allege they are entitled to qualified immunity. [ECF 220]. The defense "is founded on the presumption governmental officials know and respect 'basic, unquestioned constitutional rights,' measured by clearly established law." *See Stephens,* 852 F.2d at 1314 (citing *Harlow* 457 U.S. at 815). The defense "shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *See Stephens,* 852 F.3d at 1314 (quoting *Hadley,* 526 F.3d at 1329).

For the defense to apply, "a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred." *See Glover,* 225 F. App'x at 784 (citing *Crosby v. Monroe Cty.,* 394 F.3d 1328, 1332 (11th Cir. 2004)). The constitutional right must be sufficiently clear for a reasonable official to understand what he or she is doing violates that right. *Glover,* 225 F. App'x at 784 (citing *Crosby,* 394 F.3d at 1332); *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

11

Once this showing has been made, the burden shifts to the Plaintiff to demonstrate that: "(1) the facts show that the defendants violated a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct." *See Stone v. Hendry,* 785 F. App'x 763, *3 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). The focus is thus on whether the law on the date of the excessive force in question gave the officials "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *See Stephens,* 852 F.3d at 1314 (citing *Hope,* 536 U.S. at 741). "The basic constitutional law governing excessive force in arrest situations was well established" before Plaintiff's arrest in 2015. *See Stephens,* 852 F.3d at 1314.

### III. Relevant Facts

### A. Defendants' Facts

Defendants have provided sworn declarations and excerpts of trial testimony to rebut Plaintiff's allegations that he was beaten by them during the course of his arrest. [ECF Nos. 220-221]. Defendants argue that none of them applied any force which caused Plaintiff an injury. [ECF No. 220, p. 3]. In their reply [ECF No. 243], Defendants argue that the two booking photographs and the Wellington medical records do not support a finding that any of the named defendants used excessive force during the course of Plaintiff's arrest. [*Id.,* p. 2].

12

1. <u>Declaration James Hart</u>

a. *Affidavit*

Deputy United States Marshal ("DUSM") James Hart ("Hart") has provided an affidavit stating that on January 14, 2015, he was working with the Drug Enforcement Administration ("DEA") Task Force to apprehend Plaintiff and other suspects in "Operation Drop Shot." [ECF 221-2, p. 3]. Prior to January 14, DUSM Hart assembled a team and distributed biographical information on Plaintiff advising that Plaintiff had an extensive criminal history that included violence. [*Id.*]. On January 14, 2015, DUSM Hart met with the members of his team, DUSM Santana, Officer Rott, DUSMs Franks, Tallichet, Baker, Hearn, Sirmans, Vizzo, and Parratt, at around 5:00 a.m. at a Walgreens parking lot in West Palm Beach. [*Id.*].

DUSM Hart states he did not request nor did he see any team member wearing a mask, camouflage clothing, gloves, combat or special boots, hats, or goggles that day. [*Id.*]. Instead, DUSM Hart explains all members wore long pants, shirts with United States Marshal ("USM") insignia on the front and the USM Fugitive Task Force on the back or down the length of a long sleeve. [*Id.*]. DUSM Hart states he wore government issued brown/khaki colored long pants and a dark tee shirt with the USM insignia on the front and the USM Fugitive Task Force lettering on the back. [*Id.*].

13

Prior to the scheduled team meeting, DUSM Hart asked the SpDUSMs to drive by Plaintiff's girlfriend's home, located several blocks from the meeting location. [*Id.,* p. 4]. At approximately 5:30 a.m., one of the SpDUSMs announced that Plaintiff was backing out of his girlfriend's residence, and driving the rental vehicle towards the meeting location. [*Id.*]. SpDUSMs followed Plaintiff as he approved the meeting location. [*Id.*]. When Plaintiff was within several feet of the group meeting location, the SpDUSMs activated their emergency lights to effect a vehicular traffic stop. [*Id.*]. Initially, Plaintiff stopped, but as DUSM Hart and his team began to approach Plaintiff's vehicle, DUSM Hart states Plaintiff sped off. [*Id.*].

As a result, two task force officers gave chase, while DUSM Hart and the others followed. [*Id.*]. DUSM Hart was driving a Dodge Durango, and SpDUSM Hearn was a passenger in the vehicle. [*Id.*]. Hart claims that Plaintiff departed West Palm Beach and entered the city limits of Riviera Beach, at which time he began darting around residential and commercial areas at a high rate of speed. [*Id.*]. DUSM Hart and his team communicated by radio as they attempted to stop Plaintiff. [*Id.*].

After about ten minutes, DUSM Hart states Plaintiff's vehicle hit the curb and stopped in the grass on the east side of the road. [*Id.*]. He observed Plaintiff begin to exit the driver side of the vehicle. [*Id.,* pp. 4-5]. DUSM Hart approached the vehicle,

14

attempting to block its escape, hitting Plaintiff's rear bumper as DUSM Hart's vehicle slid in the dewy grass and stopped. [*Id*., p. 5]. Before DUSM Hart stepped out of his vehicle, Plaintiff was standing outside the rental car, while other members of DUSM Hart's team ordered Plaintiff to get down and lay on the ground. [*Id.*]. DUSM Hart then quickly stepped over and handcuffed Plaintiff. [*Id.*]. Plaintiff then sat on the curb with his hands behind his back. [*Id.*].

At the time, Plaintiff sat calmly and did not appear to be in distress. [*Id.*]. DUSM Hart states he and his team did not speak to Plaintiff, other than to inquire if he needed any medical attention. [*Id.*]. DUSM Hart claims this is routinely done, especially where, as here, Plaintiff hit his car on the curb. [*Id.*]. DUSM Hart, however, states no one struck, hit, or touched Plaintiff "inappropriately, if at all." [*Id.*].

DUSM Hart states Officer Rott did not appear on the scene until after Plaintiff had been handcuffed. [*Id.*]. Upon his arrival, DUSM Hart handed Officer Rott the four cellular phones that were next to Plaintiff at the time he was handcuffed. [*Id.*]. Officer Rott was responsible for transporting Plaintiff to the DEA Office for processing. [*Id.*]. DUSM Hart asked SpDUSMs Tallichet and Franks to accompany Officer Rott because USM protocol requires more than one DUSM to transport an "in custody prisoner." [*Id.*].

15

DUSM states that the Plaintiff's rental vehicle was totaled because the front axle was snapped when Plaintiff hit the curb. [*Id.,* p. 6]. On January 20, 2015, DUSM Hart completed a written report documenting Plaintiff's January 14, 2015 arrest. [*Id.,* p. 6-9].

### b. *Trial Testimony*

At trial, DUSM Hart testified that, on January 14, 2015, Plaintiff was driving a small Ford Escape. [ECF 221-4, p. 4]. After Plaintiff stopped and then fled, he and the others gave chase, and all had their lights and sirens activated. [*Id.,* pp. 7-8]. As Plaintiff drove on Dixie Highway, he hit a curb, hopping onto the grassy median. [*Id.,* p. 9]. DUSM Hart pulled up onto the grass, right behind the Plaintiff, to block him in, and as he braked, his vehicle hit the back of Plaintiff's vehicle. [*Id.*]. DUSM Hart concedes that at the time of impact with Plaintiff's vehicle, Plaintiff was halfway in and halfway out of the rental vehicle. [*Id.,* p. 9]. After both vehicles came to a stop, DUSM Hart states that the other team members ordered Plaintiff to the ground, and he complied. [*Id.,* p. 10]. DUSM Hart states he "actually" handcuffed the Plaintiff. [*Id.*]. During cross-examination, DUSM Hart states that, at the time his vehicle hit Plaintiff's, Plaintiff was standing up, with one foot in and one foot out of the vehicle. [*Id.,* p. 17]. DUSM Hart denied Plaintiff was physically assaulted. [*Id.,* p. 18].

16

2. Declarations of DUSM Santana, SpDUSMs Tallichet and Franks

Defendants, DUSM Santana, and SpDUSMs Tallichet and Franks, have also provided sworn affidavits in support of summary judgment. *See* [ECF Nos. 221-6; 221-7; 221-10]. All three corroborate DUSM Hart's affidavit, confirming they were part of a team and met on January 14, 2015 to assist in the apprehension of Plaintiff. [ECF No. 221-6, pp. 1-2; ECF No. 221-7, pp. 1-2; ECF No. 221-10, pp.1-2]. They learned that Plaintiff was leaving his girlfriend's residence, heading towards the task force's location, when officers attempted to effectuate a traffic stop, but Plaintiff fled, resulting in a vehicular chase. [*Id.*]. SpDUSMs Tallichet and Franks were driving an unmarked, blue Ford F150 truck, equipped with activated emergency lights and siren as it followed Plaintiff's vehicle. [ECF No. 221-6, p. 3; ECF No. 221-7, p. 3]. DUSM Santa followed, driving a Black Ford Taurus. [ECF No. 221-10, p. 3].

SpDUSMs Tallichet and Franks aver that they were wearing a black shirt with "POLICE" marked on it, blue jeans, and a black tactical vest with "POLICE" insignia. [ECF No. 221-6, p. 3; ECF 221-7, p. 3]. SpDUSM Tallichet was bearing tan boots, while SpDUSM Franks wore black shoes and a black hat. [*Id.*]. Eventually, SpDUSMs lost sight of Plaintiff, but monitored the chase via radio. [*Id.*]. While stopped on Blue Heron Boulevard, they heard what sounded like a vehicular

17

crash nearby, and began driving towards the direction of the sound. [ECF No. 221-6, p. 4; ECF No. 221-7, p. 4]. Upon their arrival at the scene of the collision, they observed Plaintiff's vehicle and numerous unmarked vehicles already in the area. [*Id.*]. Plaintiff was already in handcuffs. [*Id.*]. A local news truck was on scene, and they later learned that a reporter and crew had captured Plaintiff getting into a police vehicle. [*Id.*]. The local news video reveals the fully exposed faces of SpDUSMs Tallichet and Franks as Plaintiff got into the front passenger side of Officer Rott's vehicle. [*Id.*]. They both guided Plaintiff to Officer Rott's vehicle, and claim that Plaintiff did not report any injuries or request any medical treatment. [*Id.*]. Both deny applying any force and deny seeing anyone apply any force. [ECF No. 221-6, p. 5; ECF No. 221-7, p. 5]. DUSM Santana states he did not make eye contact with Plaintiff and did not witness who made the arrest. [ECF No. 221-10, p. 4].

3.    Declaration of SpUSM Linehan

SpUSM Linehan has provided a sworn affidavit which reveals that on January 14, 2015, while at the West Palm Beach DEA District Office, he was speaking with Plaintiff when he observed a "minor laceration" to Plaintiff's lip. [ECF No. 221-8, p. 3]. SpUSM Linehan states that Plaintiff at no time requested that he be transported to a hospital or medical facility. [*Id.*]. After processing Plaintiff, he was transported to the Palm Beach County Jail, where SpUSM Linehan spoke with the booking

deputy at the jail. [*Id.*]. At that time, Plaintiff complained, for the first time, that he was suffering from head pain. [*Id.*]. As a result, the booking deputy instructed that Plaintiff be taken to a hospital for examination. [*Id.*]. SpUSM Linehan states he transported Plaintiff to the Wellington Medical Facility, where Plaintiff received examination and treatment for a purported head contusion. [*Id.*; p. 6].

4.    Declaration of Officer Rott

a. *Sworn Affidavit*

Officer Rott has provided a sworn affidavit which reveals that on January 14, 2015 he was driving an assigned, unmarked, black Chevrolet Impala equipped with emergency police lights. [ECF 221-9, p. 3]. At the time, Officer Rott states he was wearing a black t-shirt, blue jeans, white sneakers, and a black police tactical vest which displayed "Police identification on the front and back." [*Id.*]. He denies wearing a mask, or any items concealing his identity. [*Id.*]. Officer Rott also pursued Plaintiff, whom he claims was traveling erratically, at a high rate of speed, through several streets in West Palm Beach before entering Riviera Beach. [*Id.*]. During the pursuit, Officer Rott explains he lost visual and audio contact with other task force vehicles. [*Id.*]. As he approached Old Dixie Highway, he observed Plaintiff's vehicle in the middle of the road, and saw Plaintiff sitting on the curb, handcuffed. [*Id., pp. 3-4*]. At the time, Plaintiff did not appear in distress, as the officer recovered four

cellular phones on the ground near the Plaintiff. [*Id.*]. When asked if he needed medical attention, Plaintiff stated that he did not. [*Id.*, p. 4]. Plaintiff asked Officer Rott to retrieve his wallet from the rental vehicle, but Officer Rott claims he did not observe a wallet in plain view. [*Id.*]. Officer Rott denies touching or having any physical contact with Plaintiff. [*Id.*].

### b. *Trial Testimony*

At Plaintiff's criminal trial, on July 29, 2015, Officer Rott testified that on January 14, 2015, he observed Plaintiff's bluish 2015 Ford SUV and the other team members unmarked vehicles driving toward the task force meeting location. [ECF No. 221-5, pp. 3-4]. As Plaintiff's vehicle crossed the street, he immediately pulled over, approximately ten to twenty feet in front of where Officer Rott was parked. [*Id.,* pp. 4-5]. However, as the task force vehicle converged, Officer Rott recalled that Plaintiff fled the scene. [*Id.*, p. 5]. Eventually, Officer Rott arrived at Old Dixie Highway, the final location where Plaintiff was arrested. [*Id.*, p. 7]. When Officer Rott exited his vehicle, he observed Plaintiff sitting on the curb. [*Id.,* p. 8]. Plaintiff did not appear to be injured in any way. [*Id.,* p. 9]. Plaintiff denied being injured and denied needing any medical attention. [*Id.*]. He denied observing any evidence that Plaintiff had been physically assaulted. [*Id.,* p. 13]. During cross-examination, Officer Rott admitted his name is not "Rick Roth." [*Id.*, p. 14].

20

5. Renee Parrett Declaration

Renee Parrett, the surviving spouse of Defendant SpDUSM Parrett, provided an affidavit stating that her husband died on March 20, 2018. [ECF No. 221-11, p. 2]. She states her husband never discussed the investigation or arrest of the Plaintiff with her and she has no knowledge of the actions that occurred on January 14, 2015. [*Id.*].

**B. Plaintiff's Facts**

Plaintiff's version of facts differ in material respects to that of the named Defendants.

1. Allegations in Complaint

Because Plaintiff's complaint was executed under penalty of perjury, the court may consider the facts contained therein as true for these purposes. [ECF 1]. Plaintiff alleges that on the day of his arrest, January 14, 2015, at around 5:30 a.m., he was driving a rental vehicle when, all of a sudden, strange cars, with dark tinted windows, suddenly approached his vehicle. [ECF No. 1, p. 3]. Plaintiff panicked, driving his vehicle to a safe area, approximately four blocks from his residence. [*Id.,* p. 3]. He pulled over, exited the vehicle, and laid down on the pavement, with his hands straight above his head, posing no immediate threat. [*Id.,* pp. 3-4].

21

At that point, Plaintiff alleges Officer Rott began beating him in the head and face with a heavy, black object that resembled a firearm. [*Id.,* p. 4]. He also alleges the Defendants began beating him in and about his head, and kicked him in the back and on the sides of his body. [*Id.*]. The injuries were so severe that the intake unit at the sheriff's department would not accept him until he was cleared by a hospital. [*Id.,* p. 4]. As a result, he was taken to Wellington Regional Medical Center, where he received treatment to his face, neck, back, and sides. [*Id.,* pp. 4-5].

Plaintiff alleged that one of the Defendants crashed into his unoccupied vehicle as he was being assaulted by the others. [*Id.,* p. 5]. He alleges the photographs taken at the scene of the inside of his vehicle confirm there was no blood anywhere inside the rental car. [*Id.*]. He maintains this confirms his injuries occurred while he was on the ground, and not in or around the vehicle, or as a result of the crash. [*Id.*].

2. Response to Summary Judgment Motion

Plaintiff has filed a sworn response to the Defendants' joint summary judgment motion, denying that there was a "high-speed chase." [ECF No. 238, p. 1]. Rather, Plaintiff explains he only attempted to reach an area were he felt safe, approximately four blocks from his home. [*Id.*]. He realleges the allegations set forth in the complaint, explaining he was on the ground, not resisting, when he was beaten

by Officer Rott and the others. [*Id.*]. He again states he was beaten in the head and face with a heavy, black object as he lay on the ground, not resisting. [*Id.,* p. 2]. He maintains he was also kicked in the back and sides of his body, resulting in further injuries to his body. [*Id.*]. Plaintiff states the assault was so severe that the Palm Beach County Jail refused to accept him almost seven hours later, until a medical clearance was obtained. [*Id.*, p. 3].

He maintains DUSM Hart's explanation that Plaintiff was standing half-in and half-out of the vehicle at the time he crashed into the rear of Plaintiff's vehicle is disingenuous because such an impact would have caused Plaintiff to lose his balance, and sent him flying twenty feet. [*Id.*, p. 4].

He argues that there remains genuine issues of material fact whether the use of force by the Defendants during the Plaintiff's arrest was excessive, thereby precluding the grant of summary judgment. [*Id.,* p. 5]. He maintains the named Defendants either actively participated in the beating and/or failed to intervene as he was physically assaulted. [*Id.,* p. 7]. Therefore, summary judgment as a matter of law is not warranted. [*Id.*].

Plaintiff attaches a copy of the Wellington Regional Medical Emergency Room Center, Emergency Department treatment record, which reveals that he was

23

seen at the emergency room on January 14, 2015 at 14:44 hours. [ECF 238, p. 14].

The Medical Report states

> The patient presents with Patient has multiple injuries to the face. The onset was just prior to arrival. The course/duration of symptoms is constant. Location: injury to the face and neck, back. The character of symptoms is pain and swelling. The degree at outset was moderate. The degree at present is moderate. Risk factors consist of none. Therapy today: none. Associated symptoms: none. Additional history: Patient with c/o facial injury. patient was brought in by police for medical clearance. Patient was Hit on the face and has multiple contusion to the face and lips. [4]

[ECF No. 238, p.14].

## 3. Response to Defendants' Statement of Facts

Plaintiff has also provided a sworn statement [ECF No. 239, pp. 1-8] and a supporting affidavit [ECF No. 239, pp. 9-13] in response to the Defendants' statement of material uncontroverted facts, which contradicts key elements surrounding the Defendants' claims regarding Plaintiff's arrest. [ECF No. 239]. He states that the "arrest warrant" is fraudulent because it indicates that Plaintiff was arrested on January 14, 2015 in Riviera Beach, when, in fact, he was arrested in Delray Beach, Florida. [*Id.,* p. 1]. He also states the return on the arrest warrant incorrectly indicates that DUSM David L. Say, Jr. was the arresting officer, when,

---

[4]The paragraph is quoted verbatim, and contains grammatical errors which have not been corrected here.

in fact, Officer Rott was the arresting officer. [*Id.*]. Plaintiff states that, contrary to the Defendants' representations, the live television video of his arrest reveals team members wearing masks and boots. [*Id., p. 3*].

Plaintiff states the chase did not last ten minutes, as suggested by the defense, but only lasted about five minutes. [*Id., p. 3*]. Plaintiff denies darting around residential and commercial areas at a high rate of speed, and drove through the area, in an effort to get to an area where he felt safe, which was approximately four blocks from his residence. [*Id., p. 2*]. Plaintiff denies being partially in the vehicle at the time DUSM Hart crashed into his car. [*Id., p. 3*]. According to the Plaintiff, once he felt safe, he stopped his vehicle, exited the car, and of his own accord, without being ordered to do so, laid on the ground, in a prone position, with his hands extended above his head, not resisting. [*Id., p. 3; p. 9*]. He alleges DUSM Hart deliberately crashed his vehicle into Plaintiff's unoccupied vehicle in order to "cover-up" the physical assault upon Plaintiff by other task members. [*Id., pp. 3, 9*]. He states it was not DUSM Hart, but Officer Rott who handcuffed him. [*Id., pp. 3, 10*].

Contrary to the representations of the Defendants, Plaintiff states he was assaulted by Officer Rott, who hit him with a black, blunt objective resembling a firearm. [*Id., pp. 4, 10*]. He claims the other task members also assaulted him, hitting

and kicking him in and around his head, back and sides of his body, causing injuries to his head, back, face, neck, and sides. [*Id.;* pp. 4, 9].

Regarding his injuries, Plaintiff disputes Defendants' representations that he was not bleeding and had no visible injuries. [*Id.,* p. 3]. Plaintiff maintains he was bleeding from his head and face. [*Id.,* p. 3]. He further denies that any of the task force members asked him if he needed medical attention. [*Id.*]. He states he was taken to Wellington Medical Facility for examination and treatment because the Palm Beach County Jail refused to accept him for processing without a medical clearance. [*Id.*, p. 6]. Plaintiff further alleges that, contrary to the Defendants' representations, the medical records and booking photographs show he was not booked at the jail until approximately twelve hours after the assault occurred. [*Id.*, pp. 5-6].

Plaintiff maintains that DUSM Hart's report was written to "cover up" the assault by Officer Rott and the other team members. [*Id.*, p. 7]. Regarding his two booking photographs, Plaintiff agrees it does not show he was bleeding, but states it does show a laceration and confirms the fact that he was, in fact, assaulted. [*Id.*]. He maintains that the Wellington medical records confirm he suffered multiple contusions to the face and lips, and suffered a facial laceration. [*Id.,* pp. 10-11].

26

He claims his vehicle was totaled not because he hit a curb, but because DUSM Hart deliberated crashed into the rear of Plaintiff's vehicle. [*Id.*, p. 3].

Plaintiff avers that DUSM Hart, Officer Rott, DEA Linehan, and Officer Robert Keating all committed perjury at trial when they denied that Plaintiff was physically assaulted. [*Id.,* p. 12].

4. Plaintiff's July 25, 2019 Deposition

On January 14, 2015, Plaintiff testified he was residing with his parents in Riviera Beach, Florida. [DE#221-3, p. 13]. However, on the morning of January 14, he woke up at the home of his girlfriend, Jeroya Icon. [*Id.*]. On that day, he was driving a Ford Escape rented from Avis Budget Rent-A-Car. [*Id.*, p. 19]. When he got to the stop sign on 45th Street and Broadway, in West Palm Beach, he observed a dark-colored car with dark tinted windows drive up behind him, and then saw flashing lights coming at him from everywhere. [*Id.* p. 24]. When he saw the dark-colored vehicle activate red and blue lights, Plaintiff was driving between 48 to 50 miles an hour. [*Id.,* pp. 27-28].

Plaintiff states he panicked because there have been incidents in Florida where drivers are pulled over and robbed by people driving unmarked vehicles with flashing blue lights. [*Id.,* pp. 26, 31]. He did not know who was in the unmarked car, and had no reason to believe it was law enforcement. [*Id.*, p. 31]. Thus, he attempted

27

to get to a safe location, driving four blocks from his parent's home before pulling off the road, onto a grassy area, exiting the vehicle, and laying down on the ground. [*Id.,* pp. 26-29, 37]. He felt safe there because he was close to home, and had notified his girlfriend by phone of his whereabouts. [*Id.,* pp. 31-32]. He was not ordered to lay down on the pavement, but he did so voluntarily. [*Id.,* p. 37]. Afterwards, some orders were given to keep his hands stretched out. [*Id.,* p. 38]. He denies resisting arrest. [*Id.,* p. 142].

Plaintiff states that while he was on the ground, not resisting, Officer Rott got on top of his back and began hitting him with what appeared to be a black gun-shaped object, causing one of his gold teeth caps that had two embedded diamonds chips to come off and be lost. [*Id.,* pp. 38, 47-48, 54-55, 60]. At the time, Plaintiff was laying flat on his stomach, with his arms stretched outward, palms facing down on the ground and his head turned towards the left so that his right cheek was on the ground. [*Id.,* p. 39]. He lost the cap during the beating which caused his lip to become swollen. [*Id.,* p. 60]. Plaintiff states that Officer Rott was not alone in beating him, there were others present, some wearing masks and gloves. [*Id.,* p. 61]. Officer Rott did not wear a mask or gloves. [*Id.,* pp. 62, 79].

He knows it was Officer Rott who handcuffed him because when he was taken to the medical center for treatment he asked who had handcuffed him, and SpDUSM

Linehan wrote on a napkin "Rick Roth" deliberating misspelling the name as "Roth," stating the individual worked for the Riviera Police Department. [*Id.,* p. 65]. It was not until later on that Plaintiff learned the correct spelling for Officer Rott's name. [*Id.,* p. 66]. A lot of the others task members that participated in assault were wearing masks and had long sleeves on. [*Id.,* p. 77].

Regarding DUSM Santana, Plaintiff testified he was unaware what particular role DUSM Santana played in Plaintiff's arrest. [*Id.*, p. 80]. He could not describe DUSM Santana nor what he was wearing at the time, but included him as a Defendant because he was part of the arrest team and did nothing to stop the assault. [*Id.,* p. 81]. He testified that while he was still on the ground and in handcuffs, the Defendants continued to kick and beat him, causing the handcuffs to cut into his wrists. [*Id.,* p. 82]. He does recall, however, one black official, who was wearing combat-like boots, kicked him while he lay on the ground. [*Id.,* pp. 83-84]. He further testified that some, but not all of the officers were wearing combat boots. [*Id.,* p. 85]. After he was lifted up off the ground, although his head hurt and bled, he noticed there were at least seven or eight officials at the scene, but could not say how many participated in the beating. [*Id.*, p. 86].

He also had no independent recollection whether SpDUSMs Baker, Hearns, Vizzo, Parrett, Tallichet, Franks, and Sirmans, and DUSM Santana participated in

29

the assault, but confirms they were at the scene based on DUSM Hart's report and trial testimony. [*Id.,* pp. 87-102]. He further denied ever speaking with any one of them. [*Id.*]. He confirms being struck by Officer Rott on the top of his head, and also being struck around his forehead. [*Id.,* p. 103]. Plaintiff states he was kicked in and about his shoulder, back, and sides. [*Id.,* pp. 103-104]. He did not see the faces of the individuals who kicked him, but he did feel the kicks. [*Id.*, p. 104]. Blood, however, only came from his forehead, and the side of his lips. [*Id.,* p. 105]. He also sustained black and blue bruising from the kicks. [*Id.*].

Officer Rott, accompanied by another official drove Plaintiff to the DEA office where he was photographed and fingerprinted. [*Id.,* p. 107]. It was then that he first spoke with Linehan. [*Id.,* pp. 107-08]. Plaintiff testified that upon his arrival at the DEA office he asked for medical attention. [*Id.,* pp. 110-11, 116]. From the DEA office, he was then driven to the Palm Beach County Jail, however, they would not accept him unless Plaintiff received a medical clearance. [*Id.,* p. 109, 115]. After getting cleared, he was returned to the Palm Beach County Jail, where he was photographed, some twelve hours after the assault. [*Id.,* pp. 119-120]. Plaintiff states that, at the time of his arrest, before the photographs were taken, his injuries appeared "way worse." [*Id.,* p. 126]. He complains he still suffers from headaches, fear of law enforcement, sleepless nights, all as a result of the assault. [*Id.,* p. 127]. Although

his bruising and head wounds have healed, Plaintiff states he still has pain. [*Id.,* p. 142].

Regarding the officials wearing masks, Plaintiff recalled there were two officials with Linehan who drove Plaintiff to the hospital, and who he claims wore masks. [*Id.,* p. 137]. Linehan, however, was not wearing a mask. [*Id.*]. He does not know how many people were present at the scene of his arrest, but thinks it was about eight or nine, individuals, and five of them wore masks. [*Id.,* pp. 138-139]. Three to four official were not wearing masks, and two of them were Officer Rott and DUSM Hart. [*Id.,* p. 139].

While still on the ground. but after the assault, Plaintiff testified he heard someone hit his car. [*Id.,* pp. 39, 46]. A dark-colored vehicle had run into the back of his unoccupied, parked rental car. [*Id.,* pp. 34-35]. He also observed a Channel 12 news truck arrive on the scene while he was still laying prone on the ground. [*Id.,* p. 45].

### C. Local Television Video

The Defendants have provided an ABC local television video news clip recorded on the day of Plaintiff's arrest. [ECF 226]. Review of the recording reveals it spans about a minute, and the only thing captured on the recording is the Plaintiff being put inside the patrol car. [ECF 226]. The video then shows the Plaintiff's

vehicle atop a tow truck has sustained damaged to its rear end. [*Id.*]. The video does not capture the front end of the vehicle. The video is also very dark, so that it is far from clear the nature and extent of Plaintiff's injuries. [*Id.*].

## IV. Discussion

## A. Qualified Immunity Defense

Defendants argue that they are entitled to the protections of qualified immunity. [ECF 220, , p. 5]. To be entitled to qualified immunity, the Defendants must first demonstrate that they were acting within their discretionary authority. *See Caldwell,* 748 F.3d at 1093. Once this showing is made, the burden shifts to the Plaintiff to establish that they are "not entitled to qualified immunity by showing that the facts alleged make out a violation of a constitutional right and that the constitutional right was clearly established at the time of [the conduct]." *Bowen v. Warden Baldwin State Prison,* 826 F.3d 1312, 1321 (11th Cir. 2015)(quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016)). Thus, it needs to be determined (1) if the facts alleged, when considered in the light most favorable to the non-moving Plaintiff, demonstrate that the Defendants' conduct violated a constitutional right, and, if so, (2) whether the constitutional right was clearly established. *Bowen,* 826 F.3d at 1321 (quoting *Perez,* 809 F.3d at 1218).

32

Here, the Plaintiff and Defendants offer two opposing version of facts. Plaintiff alleges that he was not fleeing at a high rate of speed, and that when safe to do so, he stopped his vehicle, got out of his car, lying face down, with his hands stretched outward, not resisting. [ECF Nos. 1; 238]. He alleges that Officer Rott and the other named Defendants began beating him for no reason, hitting him in and about the face, head, and body, causing a laceration to his head, injury to his lips, and bruising to his face and body. [*Id.*]. Defendants, however, argue that they did not use any force to restrain the Plaintiff, and deny that Plaintiff suffered any injury during the course of the arrest. [ECF No. 220].

As applied, Plaintiff unequivocally states that Officer Rott beat him with a heavy, black object, shaped like a firearm. Officer Rott denies doing so. Plaintiff states he knows the others present kicked and beat him repeatedly, but cannot identify them because many wore masks. The remaining named Defendants deny beating or otherwise unlawfully touching Plaintiff. The court, however, must view the facts and draw all reasonable inferences in favor of the non-moving party at the summary judgment stage. *See Hinson v. Bias,* 927 F.3d 1103, 1118 (11th Cir. 2019)(citing *Glasscox v. City of Argo,* 903 F.3d 1207, 1212 (11th Cir. 2018)). In a qualified immunity case, the court adopts the non-moving Plaintiff's version of facts

33

as true. *Hinson,* 927 F.3d at 1118 (citing *Beshers v. Harrison,* 495 F.3d 1260, 1262

n. 1 (11th Cir. 2007)(citing *Scott v. Harris,* 550 U.S. 372 (2007)).

Plaintiff only specifically identified Officer Rott, who was unmasked at the

time of the assault. Plaintiff alleges Officer Rott beat him repeatedly over the head

with what appeared to be a firearm. Plaintiff has no independent memory which of

the remaining Defendants, who participated in his arrest, beat him or stood by and

failed to intervene. He is certain that those wearing masks and boots did kick him in

and about his body, but he could not identify them by physical description because

they concealed their faces. As in *Hinson,* the court here cannot accept Plaintiff's

version of facts as to these Defendants because of Plaintiff's lack of independent

memory regarding the nature of the force, if any, employed by the remaining

Defendants. Plaintiff concedes he was able to learn the identity of those present and

involved in his arrest from DUSM Hart's report.

When a Plaintiff cannot rebut an officer's version of facts, the record must be

examined to determine if the officer's story is "internally consistent and consistent

with other known facts." *See Hinson,* 927 F.3d at 1118 (citing *Flythe v. Dist. of*

*Columbia,* 791 F.3d 13, 19 (D.C. Cir. 2015) (quoting *Scott v. Henrich,* 39 F.3d 912,

915 (9th Cir. 1994)). The officer's account of events need not be accepted if, as here,

there exists circumstantial or other evidence which "could convince a rational

factfinder that the officer acted unreasonably." *See Hinson,* 927 F.3d at 1118 (citing *Flythe,* 791 F.3d at 19 (quoting *Henrich,* 39 F.3d at 915). Where circumstantial evidence supports a dispute of material fact, summary judgment is inappropriate. *Hinson,* 927 F.3d at 1118 (quoting *Henrich,* 39 F.3d at 915).

Unlike the Plaintiff in *Hinson,* however, in this case, other evidence, including booking photographs, Plaintiff's emergency room treatment record, and Plaintiff's deposition testimony establish there is a genuine issue of fact regarding the amount of force used during the arrest, and the ensuing laceration to Plaintiff's head, injury to his lip, and moderate contusions to the face and body. The medical evidence and photographs confirm that, contrary to the Defendants' allegations, Plaintiff did sustain multiple injuries, including a laceration to his head, during the arrest. Plaintiff's version of the facts suggest that Officer Rott and the other Defendants used excessive force on an unresisting suspect during the course of Plaintiff's arrest. The Defendants speculate that Plaintiff's injuries may have been sustained as Plaintiff was exiting his vehicle, claiming Plaintiff was not on the ground when his vehicle was struck by DUSM Hart's vehicle. Plaintiff, however, alleges he was already prostrate on the ground at the time DUSM Hart crashed into Plaintiff's unoccupied vehicle, and did so in order to "cover up" Plaintiff's assault. The television video recording provided does not resolve this factual dispute.

The Defendants also deny using any force to restrain Plaintiff. On the other hand, Plaintiff alleges the Defendants beat him repeatedly in and about his head and body as he lay on the ground unresisting. The Eleventh Circuit has made clear that the gratuitous use of force when a criminal suspect is restrained and/or not resisting arrest constitutes excessive force. *See Reese v. Herbert,* 527 F.3d at 1273. At the time of Plaintiff's arrest, Eleventh Circuit precedent gave clear notice to a reasonable officer that excessive force, used without justification, is unconstitutional. *See Reese,* 527 F.3d at 1274.

When considering the facts in the light most favorable to the non-moving Plaintiff, there remains a genuine issue of fact regarding the amount of force used by Officer Rott and whether the remaining Defendants participated in the beating or otherwise stood by and did nothing. There remains an issue whether Plaintiff was, in fact, already on the ground and not resisting when Officer Rott allegedly began beating him, and when the remaining masked Defendants, some wearing combat boots, joined the beating, gratuitously kicking Plaintiff in and about his head and body. From the state of the law at the time of the incident, it would be obvious to a reasonable officer that such gratuitous use of force must have been unconstitutional. *See Vinyard,* 311 F.3d at 1352 (quoting *Harris,* 536 U.S. at 741).

36

Given Plaintiff's version of facts as true, the manner in which the arrest was carried out violated Plaintiff's Fourth Amendment rights. *See Saunders v. Duke,* 76 F.3d at 1265-66 (reversing dismissal of Plaintiff's case on qualified immunity where handcuffed suspect, who held his face up to keep from being burned by hot pavement on which he was lying, was slammed down by one of the officers "with extreme force," causing "lacerations, injuries to his teeth and jaw, damage to his left eardrum, and emotional distress due to his head striking the pavement"). Therefore, the Defendants are not entitled to qualified immunity.

## B. Unlawful Use of Force

As discussed above, the gratuitous use of force when a criminal suspect is not resisting constitutes excessive use of force, in violation of the Fourth Amendment. *See Hadley,* 526 F.3d at 1330. As applied, the Plaintiff alleges he was not resisting and voluntarily laid down on the ground with his arms outstretched when Officer Rott and the others gratuitously began beating him for no apparent reason. Given the facts alleged, when viewed in the light most favorable to the Plaintiff, the Defendants are not entitled to judgment as a matter of law. *See Saunders,* 766 F.3d at 1270 (citing *Hadley,* 526 F.3d at 1330 and *Slicker,* 215 F.3d at 1231-32). It does not matter whether the excessive force was applied prior to the Plaintiff being handcuffed, or in the course of the investigation and arrest, since it is all part of the arrest procedure.

*See Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010). The Eleventh Circuit has made clear that an officer violates the Fourth Amendment and is not entitled to qualified immunity when he uses gratuitous and excessive force against a suspect who is not resisting and in control. Thus, the Defendant's joint motion for summary judgment [ECF No. 220] should be DENIED.

## V. Conclusion

It is, therefore, recommended that Defendants' joint motion for summary judgment [ECF 220] be DENIED, and the case proceed to trial against the named Defendants on Plaintiff's excessive use of force and punitive damages claims.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 12th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

38

cc:   Jason Bennett Sherry, Esq.
      Attorney for Plaintiff
      Sherry Law Office PLLC
      200 SE 1st St., Ste. 400
      Miami, FL 33131
      Email: jason@sherrylawoffice.com

      Gil Ben-Ezram, Esquire
      Jeffrey B Goldberg, Esquire
      Nicolas Swerdloff, Esquire
      Hughes Hubbard and Reed LLP
      Attorneys for the Plaintiff
      201 S. Biscayne Blvd., Suite 2500
      Miami, FL 33131
      Email: gil.ben-ezra@hugheshubbard.com
      Email: jeffrey.goldberg@hugheshubbard.com
      Email: nicolas.swerdloff@hugheshubbard.com

      Karin D. Wherry, AUSA
      United States Attorney's Office
      99 NE 4 Street
      Miami, FL 33132
      Email: karin.wherry@usdoj.gov